ration defendant as the medium best adapted to accomplish the end sought.

Under this decision, it is quite apparent that the provisions of the will here in question are not, as held by the trial court, ineffectual and void. They should be upheld, either under the cases referred to by the Appellate Division or under the statutes of 1893 and 1901. We see no reason why they should not be construed as vesting absolute title in this corporation of 1841–1863. There is here a devise directly to a corporation, and we may hold this corporation was intended, though incorrectly named. In the Bowman Case there was no attempt to make a devise to any corporation at all. Only the purposes for which the devise was made were stated. In this respect the two cases are distinguishable, and this case is clearly within many of the cases referred to by the Appellate Division in that case. But, if it is said that the beneficiary or trustee is not indicated with sufficient certainty or correctness, then it is covered by the statutes of 1893 and 1901, as interpreted and applied by the Court of Appeals in the Bowman Case, and the Supreme Court should administer the trust and appoint the corporation of 1841–1868 as trustee as the "medium best adapted to accomplish the end sought."

We are of the opinion, in view of the Bowman Case, the latter course had better be adopted. Although many of the provisions of the judgment are not in controversy, yet under the circumstances, and the changes rendered necessary by this decision, we think a new trial had better be had, rather than an attempt to modify the judgment. It will be merely formal trial, in view of the decision here made.

Judgment reversed, and new trial ordered, with costs to the appellants to abide event. All concur, except KRUSE, J., who dissents on the ground that the testamentary disposition nominally to the diocese of Central New York is void.

---

(113 App. Div. 547.)

CITY OF ROME v. WHITESTOWN WATERWORKS CO. et al.

(Supreme Court, Appellate Division, Fourth Department. May 23, 1906.)

1. MUNICIPAL CORPORATIONS—BONDS—ISSUANCE—SINKING FUND.
    Const. art. 8, § 10, requiring an act authorizing a municipal corporation to raise money by the issuance of bonds to provide for a sinking fund, has no application to a case where the 10 per cent. limit of indebtedness fixed by the Constitution has not been reached by the city in question.

2. SAME—PRESUMPTIONS.
    In the absence of proof to the contrary, it will be presumed, in support of the validity of an act authorizing a city to issue bonds without providing for a sinking fund, that the city's debts had not reached the constitutional limit of 10 per cent.

3. ELECTIONS — MUNICIPAL EXPENDITURES — DETERMINATION — WATERWORKS —ENLARGEMENT—VOTE NECESSARY.
    Acts 1899, c. 624, p. 1371, § 11, provides that, before any pecuniary liability is incurred by the city of Rome for additional water supply, its common council shall adopt a plan and submit the same to the voters of the corporation tax district as provided by the city's charter, and, if the ordinance is approved "by a majority of the voters of the corpora-

tion tax district," then the plan may be carried into effect. *Held*, that an adoption of such ordinance by a majority of the electors voting thereon, as distinguished from a majority of the qualified voters in the tax district, was sufficient for its adoption.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Elections, § 214.]

**4. MUNICIPAL CORPORATIONS—CITY COUNCIL—SPECIAL MEETINGS—REGULARITY—PRESUMPTION FROM MINUTES.**

In the absence of proof to the contrary, it will be presumed that a special meeting of the common council of a city was regularly called and held.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 216.]

**5. EMINENT DOMAIN—PUBLIC USE—NECESSITY.**

Public use and necessity are essential elements to the condemnation of land for the purpose of increasing the water supply of a city.

[Ed. Note.—For cases in point, see vol. 18, Cent Dig. Eminent Domain, §§ 51, 147.]

**6. SAME—DETERMINATION—JUDICIAL QUESTION.**

Acts 1899, p. 1371, c. 624, § 10, empowers the city of Rome to extend as may be necessary its present water system and secure an additional supply by some feasible system; and section 13 declares that, if purchase of the desired property cannot be made by agreement, condemnation proceedings may be resorted to. *Held*, that the necessity for resort to condemnation proceedings is a judicial question for the court.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain, § 464.]

**7. SAME—EVIDENCE—NECESSITY OF APPROPRIATION.**

In a proceeding to condemn land to increase the water supply of a city, evidence *held* sufficient to sustain a finding that a reasonable necessity existed for the proceeding.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain. § 464.]

**8. SAME—SOURCE—SELECTION.**

Where the necessity for the condemnation of land to increase the water supply of the city of Rome appeared, the selection of the source and system, as well as the location of a dam for which the property sought to be condemned was desired, was vested by Acts 1899, p. 1371, c. 624, §§ 10, 11, in the authorities of the city.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain, § 169.]

**9. WATERS AND WATER COURSES—APPROPRIATION—PRIORITY.**

Acts 1899, p. 1367, c. 624, authorizing the city of Rome to increase its water supply by taking water from Fish creek, operated to give the city a preference so far as the waters of such creek were concerned, so that the filing of a map and survey of defendant's location on such creek, as required by Transportation Corporations Law, Laws 1890, p. 1151, c. 566, § 83, authorizing the diversion of the flow of waters from lands of riparian owners and persons owning or interested in any of such waters, prior to an election held by plaintiff city to carry the act of 1899 into effect, which election, however, was held before any actual diversion of the water had been made by the defendant, did not give defendant a prior right to the waters of the stream.

Appeal from Special Term, Oneida County.

Action by the city of Rome against the Whitestown Waterworks Company and others. From a judgment for plaintiff on a referee's report, defendant appeals. Affirmed.

The following is the opinion of Referee Merwin:

The plaintiff in this case, for the purpose of inaugurating its system for obtaining from Fish creek, under the provisions of chapter 624, p. 1367, of the Laws of 1899, an additional supply of water for public use, seeks to obtain by condemnation certain real estate owned by the defendant company and situated on the east bank of said creek. The defendant claims, not only that the plaintiff has not made out a prima facie case for condemnation, but also, if the plaintiff has made out such case, still the defendant company in its business of supplying water for public use has a prior right to the property in question, and that therefore the plaintiff has no right to condemn it.

In section 15, c. 624, p. 1372, of the act of 1899, provision is made for the issuing of bonds by the common council of the plaintiff for the purpose of raising money to carry out the proposed plan. No provision is made for a sinking fund. It is therefore claimed by the defendant that, in the absence of such a provision, the city, under the requirements of section 10 of article 8 of the Constitution, has no right to issue the bonds, and is therefore disabled from taking the present proceeding. The constitutional requirement as to a sinking fund does not apply to a case where the 10 per cent. limit referred to in the Constitution has not been reached. City of Rochester v. Quintard, 136 N. Y. 221, 32 N. E. 760. It does not appear here that such limit has been reached. In the absence of such proof I cannot assume that in this regard there is or will be any violation of the Constitution. Some other constitutional objections are set up in the defendant's answer, but as no point is made about them in the argument before me, they need not be here discussed. I shall therefore assume that the Constitution does not interfere with any right the plaintiff may have under the act to prosecute this proceeding.

By section 11, c. 624, p. 1371, of the act of 1899, it is provided that, before any pecuniary liability was incurred by the city in regard to obtaining an additional supply of water authorized by section 10, the common council of the city should by an act or ordinance adopt and prescribe such plan, estimate, system, or source of water for the increased supply as shall be recommended and approved by the board of water and sewer commissioners of the city as most feasible and best adapted to supply the requisite quantity and quality of water, together with the estimated cost and expense thereof, and should submit the same for approval to the voters of the corporation tax district of the city of Rome in the manner provided in section 13 of article 5 of the charter of the city. If the ordinance was approved "by a majority of the voters of the corporation tax district" (section 12, c. 624, p. 1371 of the act of 1899), then the board were directed to proceed to carry out the plan, and, if necessary, were authorized (section 13) to take condemnation proceedings as prescribed by the Code of Civil Procedure.

It is claimed by the defendant that in two respects the proceedings in regard to the ordinance are defective: First, that it was adopted by the common council at a special meeting, and it is not shown that such meeting was regularly called; second, that it was not approved by a majority of the voters of the corporation tax district, as required by section 12. The presumption is that the special meeting of the common council was regularly held. People ex rel., etc., v. Common Council of Rochester. 5 Lans. 11; Nelson v. Eaton 26 N. Y. 410-415; 20 Am. & Eng. Ency. (2d Ed.) 1212. That presumption is not overcome.

The question as to the approval by the voters depends on whether a majority was required of those voting or of those entitled to vote. If the latter is the test, the ordinance was not duly adopted, as the defendant has shown that the number of qualified voters in the corporation tax district, within the description of section 13 of title 5 of the charter, exceeded at the time of the election twice the number of those voting for the ordinance. The point made by the plaintiff that it was also incumbent to show by direct evidence that the persons claimed to be qualified voters were citizens of the United States is not. I think, well taken. The defendant could in that regard rely on the presumption from the proof made. State v. Beackmo, 6 Blackf. (Ind.) 488; 22 Am. & Eng. Cyc. (2d Ed.) 1285. I am, however, of the opinion that a majority of those voting was all that was necessary. Clearly that was the rule laid down in section 13, tit. 5, for the elections therein referred to. They related

to taxes for extraordinary or special purposes, and there was no reason for having a different rule on the occasion in question. If a majority of the qualified voters was required, a practical difficulty would arise in determining the result of the election. There are no provisions as to how, or when, or by whom, the number of qualified voters shall be ascertained. If the expression "a majority of the voters of the corporation tax district" in section 12 of the act of 1899 is to be deemed controlling, still that is satisfied by a majority of those voting. Carroll County v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517. See, also, Smith v. Proctor, 130 N. Y. 319, 29 N. E. 312, 14 L. R. A. 403; Dillon on Municipal Corp. § 44. The intention of the statute of 1899 was, I think, to apply the same rule to electing under its provisions as were applicable to similar elections provided for by the charter.

Public use and necessity are essential elements to the obtaining of condemnation. There must, as said in Matter of N. Y. C. & H. R. R. R. Co., 77 N. Y. 248, be a reasonable necessity for the corporation to have the property in order to discharge properly its duty to the public. It is here claimed by the defendant that no such necessity is shown by the plaintiff. The plaintiff, however, says that the question of necessity is for the municipality to determine, and cannot here be contested. The act of 1899 (section 10, c. 624, p. 1371) empowers the city by its proper officers to extend and increase, from time to time as may be necessary, its present water system and supply, and secure an additional supply of pure and wholesome water from Fish creek or other suitable stream in the country of Oneida by such feasible system as its board of water commissioners should recommend and deem best. By section 13 it is provided that, if purchase of desired property cannot be made by agreement, then the condemnation proceedings prescribed by the Code may be resorted to. In those proceedings the questions of public use and necessity may be put at issue. It is conceded that the element of public use exists. Undoubtedly it was in the power of the Legislature to make the action of the officers of the city conclusive on the question of necessity. The intent to do so should clearly appear. In view of the limit on the power to take property to such as may from time to time be necessary, and the provision that in case of disagreement with an owner the provisions of the Code should be resorted to, and that under those provisions the necessity could be put at issue, I am of the opinion that the question of necessity is for the court to determine.

The plaintiff since 1872 has obtained its water supply from the Mohawk river, being authorized by chapter 352, p. 869, of the Laws of 1872 to take it from the river at any point within the city. The amount seems to have been adequate except in times of drouth, when the state, through the operation of its canal feeders, largely exhausted the supply. The needs of the state are not likely to decrease. The water of the river is somewhat contaminated by the drainage upon its route and also from the spillways along the Black River Canal. The impurities from these sources might be diminished by proper action on the part of the plaintiff, though perhaps at considerable expense. It seems to me that the effort of the plaintiff to secure an additional supply from Fish creek is reasonable. The lurking danger in the quality of the water it now uses and the increasing liability to dangerous shortage by reason of the needs of the state at a most inopportune time are potent circumstances. I am of the opinion that reasonable necessity is shown. As said in P. W. W. W. Co. v. Bird, 130 N. Y. 260, 29 N. E. 246; in a matter of such extreme necessity all contingencies should be provided for. If the necessity exists, the selection of the source or system is, by Acts 1899, p. 1371, c. 624, §§ 10, 11, left to the authorities of the city (In re New York Cent. & H. R. R. Co., 77 N. Y. 248; In re New York, L. & W. R. Co., 35 Hun, 220, 230), as well as the location of the dam, which is the purpose for which the property in question is desired.

If the foregoing views are correct, the plaintiff is entitled to the relief it asks, unless the defendant had shown that it has a prior right. The defendant seeks the benefit of the rule that lands already taken for and devoted to a public use by a corporation in pursuance of law cannot be taken by another corporation for a public use without special authority from the Legislature. It appears that the defendant company was incorporated May 13, 1899, pursuant to the provisions of the transportation corporation law (Laws

1890, p. 1136, c. 566), for the purpose of supplying water to the town of Whitestown and the village of Whitesboro. Contracts were made with those localities. On June 25, 1900, a contract was made with the town of New Hartford, and on October 24, 1900, the defendant's certificate of incorporation was amended so as to include that locality. Under these contracts the defendant furnished water, taking it from a stream in the town of Whitestown. This source having become inadequate, the defendant on April 8, 1901, authorized its superintendent to purchase lands or water rights upon or in the vicinity of Fish creek. Thereupon from April 13 to May 6, 1901, divers conveyances or options were obtained for the benefit of the defendant from the owners of a number of parcels of land along either side of the creek and abutting thereon. Among these was a deed of the property in question bearing date May 6, 1901. On the the 20th of April, 1901, the defendant entered into a contract with the town of Lee, for permission to lay water mains and pipes in its streets, and in consideration thereof agreeing to furnish during the enjoyment of such privilege certain hydrants and water to the town, and on May 7, 1901, the company filed an amended certificate of incorporation, including the town of Lee. On the 6th of May, 1901, the defendant filed a map and survey of lands on each side of Fish creek, intended to be taken and used by the company for the purposes of its incorporation. This map includes the lands here in controversy. Such a map and survey was, by section 83 of the transportation corporation law, required to be filed by the corporation, before entering upon, taking or using any land for the purposes of its incorporation. Sec. 84 authorized such corporation to acquire the right to divert the flow of waters "from the lands of riparian owners and from persons owning or interested in any waters." The plaintiff, by its board of water commissioners, commenced the construction of an additional supply of water, in March, 1897, by the employment of an engineer to make surveys and report upon plans and estimates. Such report was made and filed October 6, 1897. The engineer in his report considered three plans, one of which was the taking of water from Fish creek, and evidently was in favor of that plan. The act of 1899 was passed May 23, 1899, and by its terms took effect immediately. On the 20th of September, 1899, the board of water commissioners by resolution recommended and approved the Fish creek plan and one of the estimates of the engineer, and requested the common council to adopt and prescribe the same and submit them for approval to the voters. This request was not acted on by the common council. On April 19, 1901, a similar resolution and request were adopted by the board at a different estimate of cost. This was acted upon by the common council on April 24, 1901, and the plan and estimate recommended and approved by the board was adopted and prescribed and an election called for May 8, 1901. Notice of this election was first published on April 26th. At the election the ordinance was approved.

It is in substance claimed by the defendant that inasmuch as its map and survey were filed May 6, 1901, and before the election, its right to the property in question and to the waters of Fish creek is paramount to that of plaintiff. That depends on the force to be given to the act of 1899. That act, so far as it conferred the right to divert water, was in effect a modification of the general power of diversion of water given in the act under which defendant was incorporated. The act of 1899 being subsequent and specific must control. Sutherland on Stat. Const. § 325. An exception is ingrafted upon the general act. As the two acts are read together, the general power is given except that the city of Rome has the right from time to time to obtain as needed an additional supply from Fish creek or other suitable stream in the county of Oneida. The act of 1899 took effect immediately and granted a present power. The fact that no pecuniary liability could be incurred until the taxpayers ratified the proposed plan did not postpone the taking effect of the act. The election did not affect the existence of the power, but only had reference to the time of its exercise. No time was fixed within which the city should act. The provision in the transportation law requiring a map and survey to be filed did not apply to the city. It did in fact act, and by proceedings of official record make its selection of plan and source, before the defendant filed its map and survey or purchased the particular property in question. The defendant has made no actual diversion of the water. The

steps it has taken are preliminary. The plain intent of the act of 1899 was, as it seems to me, to give the city of Rome a preference, so far as the waters of Fish creek were concerned. There was a definite and specific declaration to that effect. This undoubtedly was within the power of the Legislature. Matter of Application of Union Ferry Co., 98 N. Y. 139, 153; Mills on Eminent Domain, § 11. In the construction of statutes, the intent is controlling. People v. Com'rs Taxes of N. Y., 95 N. Y. 558.

It is not proper to say that the grant or power did not exist until the taxpayers had ratified the proposed plan. Such a construction would put the Legislature in the attitude of saying to the city: "You may take the waters of Fish creek from time to time as you need them, unless some corporation under the general law take them or file a map and survey before you need the water or your taxpayers have an opportunity to vote." Such construction would, I think, be repugnant to the purpose of the act, and no intent of that kind can properly be inferred. If, for the interest of the general public, the law is too broad, the remedy is with the Legislature and should not be reached by construction. According to the evidence there is plenty of water for both parties, but the amount the plaintiff may take is not here for determination. I see no way to avoid the conclusion that the right of the plaintiff is paramount and that any right the defendant company may have under the general law is subject to the reasonable exercise by plaintiff of its prior right. In this view it is not important here to determine whether the ownership of the bed of the creek is in the state or in the riparian owners. In either case the plaintiff would have the right to condemn the property described in the complaint.

Upon the issues before me the plaintiff is, I think, entitled to judgment.

Lewis, Watkins & Titus, for appellants.
John S. Baker and O. P. Backus, for respondent.

PER CURIAM. Interlocutory judgment and final order affirmed, with costs, on opinion of Merwin, referee.

<hr>

(114 App. Div. 915)

COLBY et al. v. TOWN OF MT. MORRIS et al.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1906.)

1. BRIDGES—TOWN LINE—CONSTRUCTION AND REPAIR.

The commissioners of highways are the officers designated by Highway Law, Laws 1890, pp. 1201, 1202, c. 568, §§ 130–134, who are given power to enter into a joint contract for the making or repair of a bridge over a stream forming the boundary line between two towns, without any action of the town's board or vote of the electors.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Bridges, § 11.]

2. SAME—FUNDS—PROVISION.

Where the commissioners of highways of two towns separated by a stream are not in funds, the authority to build or repair a bridge over the stream rests entirely on the board of supervisors, who are authorized to contract and to borrow money for such purpose by County Law, Laws 1892, p. 1761, c. 686, §§ 68, 69.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Bridges, § 11.]

3. SAME—LOCATION OF BRIDGE.

Commissioners of highways have no authority to contract for the building of a bridge not abutting on highways or on a site not selected or authorized by the towns joined by the bridge.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Bridges, §§ 6, 9.]

4. SAME—LAYING OUT OF HIGHWAY.

Where highways leading to a bridge over a stream on the boundary line between two towns were laid out while the bridge was in process of con-